738 F.Supp. 1272 (1990)
McKEE BAKING COMPANY, Plaintiff,
v.
INTERSTATE BRANDS CORPORATION, Defendant.
No. 90-0450C(6).
United States District Court, E.D. Missouri, E.D.
June 14, 1990.
*1273 Thomas M. Carney, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, St. Louis, Mo., James C. Rubinger & Kimla Wilkins, (co-counsel), Donald A. Kaul, Washington, D.C., for plaintiff.
Robert Hartzog, Clayton, Mo., Robert D. Hovey, Thomas Van Hoozer, Hovey, Williams, Timmons & Collins, Kansas City, Mo., for defendant.

MEMORANDUM
GUNN, District Judge.
This case is currently before the Court on plaintiff's motion for preliminary injunction. For the reasons set forth fully below, this Court denies the motion.
Plaintiff McKee Baking Company ("McKee") has for thirty years produced and sold snack cakes under the federally registered trademark LITTLE DEBBIE. Defendant Interstate Brands Corporation ("Interstate") has used the registered trademarks DOLLY MADISON (since 1912), DOLLY'S, and the trademark DOLLY in connection with bakery snack items. Interstate has recently begun marketing snack cakes under the mark LITTLE DOLLIES.
McKee brings this action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), Mo.Stat.Rev. § 375.934 and Missouri common law, seeking injunctive, declaratory and monetary relief.
Hearing on McKee's motion for preliminary injunction was held on May 30, 1990. The parties did not introduce any further evidence at that time but relied upon the evidence already in the record. The Court having considered the pleadings, the testimony of the witnesses, the documents introduced into evidence, and being fully advised in the premises, finds the following facts.
McKee produces and sells a variety of snack items, including cookies, cakes and pies, identified by the trademark LITTLE DEBBIE. McKee markets its products in packages containing both multiple and single servings. LITTLE DEBBIE is the only trademark which appears on the McKee product's package as it is the "house mark" for McKee's products.
Interstate sells its snack cakes in the St. Louis area and other markets. The Interstate products are sold in individual and multiple servings. Interstate's packages bear the DOLLY MADISON "house mark" as well as the gingham check border characteristically used in Interstate's DOLLY MADISON product line. Two of the four snack cakes on which Interstate has been using the LITTLE DOLLIES markthe Oatmeal Creme Pie and the Fudge Brownie are identical to LITTLE DEBBIE products. Interstate displays its LITTLE DOLLIES product line separately from the store's shelves in a free-standing cardboard display which stands approximately 5 to 6 feet tall and bears prominently the DOLLY MADISON house logo and red gingham border.
Two district sales managers for McKee, George D. Hammons and Paul Sullivan, testified by affidavit that they are personally aware of instances in which either store managers or customers have mistaken LITTLE DOLLIES for McKee products. Interstate objects to this testimony as hearsay. McKee responds that it does not offer the testimony to show the truth of the matters asserted, but rather to show the state of mind of the store managers and customers: i.e., they were confused by the similarity between the names of the products. The Court finds that in this instance, the matter being asserted is state of mind and therefore these statements are hearsay. Nevertheless, even in the absence of an objection to the nature of the testimony, the Court finds that these purported instances of confusion are too infrequent and that the McKee sales managers are not themselves neutral and unbiased witnesses in this matter. See, e.g., Life Technologies, Inc. v. Gibbco Scientific, Inc., 826 F.2d 775, 777 (8th Cir.1987).
Interstate argues that its use of the LITTLE DOLLIES mark is but a natural extension *1274 of its use of DOLLY MADISON and DOLLY'S. Moreover, it argues that its mark is descriptive insofar as the word "LITTLE" refers to the size and cost of the snack cakes so named which are a smaller and less expensive version of already existing DOLLY MADISON products.
In a similar argument, Interstate alleges that in its investigation of the federal trademark records in the U.S. Patent and Trademark Office prior to using LITTLE DOLLIES on its products, it discovered other federal registrations for marks using the prefix "LITTLE," or equivalent expressions such as "LIL." Among those other marks which are used on bakery goods are LIL O DONUTS; LITTLE DICKENS; BEEBO LITTLE DOOZIES; LITTLE JACK HORNER; LITTLE BROWNIE; LITTLE PEPI'S; LITTLE PEOPLE'S; LITTLE PUDS; LITTLE STUFF; LITTLE DUTCH BOY; LITTLE GINA'S; LITTLE BROWNIE BAKERS; THE LITTLE RED HEN; LITTLE MIDDLES; LITTLE SWEETIES; and LITTLE CHIPSTERS. In fact, the Court notes that Interstate, itself, apparently markets a product under the DOLLY MADISON BAKERY housemark called "LI'L DEVILS." (See, Ex. 22 to defendant's opposition to plaintiff's application for a preliminary injunction.) Interstate also became aware of the LITTLE DEBBIE mark during its investigation.
McKee points out that Interstate has adduced no evidence of other usage of marks using the word "little" in combination with another word, but has merely presented evidence of other registration. The Court notes that Interstate has produced copies of United States Patent Office Principal Register Trademark documents in connection with each of the other marks using "little" that were found. Several of those documents indicate the date of the trademark's first use.
McKee also asserts that LITTLE DEBBIE, read as a phrase rather than as single words, is highly protectible insofar as it is an arbitrary mark.
In passing upon a motion for temporary injunctive relief, the Court must weigh four factors: (1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir.1987); Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981). Of these four factors, no single factor determines the outcome. Rather, the Court must weigh the factors in light of the totality of the particular circumstances of a given case. In other words,
If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.
Dataphase, 640 F.2d at 113.
The standard for granting preliminary relief set forth in Dataphase is equally applicable in the case of alleged copyright infringement. General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624 (8th Cir.1987).
As an initial inquiry, the Court must determine whether a mark is entitled to trademark protection. General Mills, 824 F.2d at 625. To that end, the Court must categorize "the mark as either generic, descriptive, suggestive, or arbitrary." Id. A generic mark is one using the "common descriptive name for a type, genus, or class of goods, and such a mark is precluded from trademark protection under any circumstances." Id. At the opposite end of the spectrum, "[a]n `arbitrary' mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached." Little Caesar Ent., Inc. v. Pizza Caesar, Inc., 834 F.2d 568, 571 (8th Cir.1987). The Court finds that LITTLE DEBBIE is an arbitrary or fanciful trademark because the name is completely unrelated to the product it represents. *1275 Accordingly, this mark is "inherently distinctive" and "entitled to immediate protection, without establishing secondary meaning." Co-Rect Products v. Marvy! Advertising Photography, 780 F.2d 1324, 1329 (8th Cir.1985).
Having found the mark protectible, the Court turns now to a discussion of the Dataphase factors as they relate to this copyright action.
In a copyright infringement action of this nature, plaintiff must show that Interstate's use of LITTLE DOLLIES "creates a likelihood of confusion, deception, or mistake on the part of an appreciable number of ordinary purchasers." General Mills, 824 F.2d at 626. In assessing the strength of plaintiff's showing, the courts are guided by several "foundational factors," including:
(1) the strength of the owner's mark; (2) the similarity between the owner's and the alleged infringer's marks; (3) the alleged infringer's intent to `pass off' its goods as those of the trademark owner; (4) the type of product, its cost, and the conditions of purchase; (5) the products' competitive proximity; and (6) incidents of actual confusion. No single factor is dispositive; numerous factors must be weighed and considered by the court.
General Mills, 824 F.2d at 626.
The Court has already found that the McKee mark is an arbitrary or fanciful mark, which contributes to the strength of the mark. The Court notes that "evidence of third party usage of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak and entitled to a narrower scope of protection." (Emphasis added.) Id. The Court finds that Interstate's introduction of the Patent Office's registrations indicating first use of other marks using "little" in connection with a name, as well as Interstate's introduction of the label from its own LI'L DEVILS is at least persuasive evidence that there are other marks in use which consist of a combination of "little" and a proper name. Thus, although LITTLE DEBBIE is an arbitrary mark, the Court finds that it is somewhat weakened by the other uses of such similar marks.
The Court finds, further, that the marks LITTLE DEBBIE and LITTLE DOLLIES are not similar. As the Eighth Circuit has instructed, the Court analyzes not only the names used in the two marks (keeping in mind that "the use of identical, even dominant, words in common does not automatically mean that two marks are similar...." General Mills, 824 F.2d at 627), but has also analyzed similarities relating to sight, sound, meaning, respective color schemes, lettering styles and box designs. Id. The Court finds that both parties herein are widely recognized in the snack food market and, therefore, given the prominent display of the respective marks consumers are likely able to distinguish between the two marks. Moreover, given the fact that LITTLE DOLLIES are displayed separately from all other snack items, the Court finds that visually the two products will be separated and more distinguishable. Finally, although LITTLE DOLLIES is a new mark, the DOLLY MADISON BAKERY housemark has been used over many years and bears the distinctive gingham border. The housemark and border both appear on the LITTLE DOLLIES package and are, arguably, as eye-catching as the LITTLE DOLLIES mark. Also, the type face and color used on the words LITTLE DOLLIES differ significantly from those used on the words LITTLE DEBBIE. The latter holds a much more prominent position on its label than does the Interstate mark, as well. Accordingly, even though snack cakes are "inexpensive impulse purchases" in which case consumers are less likely to notice labels, the Court finds that on the facts before it consumers would likely distinguish between the two products' sources.
Finally, McKee argues that Interstate's admitted discovery of the LITTLE DEBBIE mark in the national trademark registry is evidence of its intent to pass off its products as McKee's. The Court does not find this argument persuasive. First, the fact that Interstate encountered extremely numerous other marks using "little" besides *1276 "LITTLE DEBBIE" tends to dilute any argument that Interstate had the intent to pass of its products as McKee's products specifically. Moreover, the Court finds the evidence of intent too indirect to be persuasive or particularly probative.
For all of the foregoing reasons, the Court finds that plaintiff has failed to demonstrate a likelihood of consumer confusion and, therefore, has failed to meet its burden of showing a likelihood of success on the merits.
The Eighth Circuit has indicated "[s]ince trademark represents intangible assets such as reputation and good will, a showing of irreparable injury can be satisfied if it appears that [plaintiff] can show a likelihood of consumer confusion." General Mills, 824 F.2d at 625. The Court has already indicated that it does not find a likelihood of consumer confusion. Accordingly, irreparable harm to McKee cannot be presumed. Further, McKee's action for permanent injunction and damages is still pending. The Court finds, therefore, that should a jury find that in fact infringement has occurred to plaintiff's detriment, damages can be awarded.
Neither party has presented the Court with any evidence of estimated actual damages. The Court finds that the speculative nature of plaintiff's damage is outweighed by the very real expense defendant would incur were it enjoined from all marketing of the LITTLE DOLLIES line. Accordingly, the Court finds that plaintiff has failed to show irreparable harm and, further, that the potential harm to defendant in the event an injunction is granted to plaintiff outweighs the potential harm to plaintiff if the injunction is denied.
For the foregoing reasons, and in accordance with its order issued contemporaneously herewith, the Court denies plaintiff's motion for preliminary injunction.

ORDER
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff's application for a preliminary injunction be and it is denied.
IT IS FURTHER ORDERED that plaintiff's motion for continuance be and it is granted. This matter is, therefore, removed from the Court's docket beginning June 18, 1990 and rescheduled on the Court's docket beginning on December 3, 1990.